<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LEROY T. MOORE, | : | |
| | : | |
| Plaintiff, | : | Civil No. 11-281 (JLL) |
| | : | |
| v. | : | |
| | : | |
| PAULA T. DOW, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> LEROY T. MOORE, Plaintiff <u>pro se</u>
> # 299658C/666976
> Northern State Prison
> 168 Frontage Road
> Newark, New Jersey 07114-2300

**WOLFSON**, District Judge

Plaintiff, Leroy T. Moore, a state inmate presently confined at the Northern State Prison in Newark, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>.  Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a)(1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it

seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part, but will issue an Order directing the pertinent parties to show cause as to whether this case should be stayed pending termination of any ongoing state criminal proceedings related to the unlawful search and seizure claim at issue in this case.

## I.   BACKGROUND

Plaintiff, Leroy T. Moore ("Moore"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: Paula T. Dow, Attorney General of the State of New Jersey; Bruce Kaplan, Middlesex County Prosecutor; Valerie Lispano; Joseph Celentano; Sgt. Scott; Investigator Craig Marchak; Investigator Rodriguez; Investigator Ellmyer; Lisa Berrios; Michael Dammaan; Carteret Police Department; Middlesex County Prosecutor's Office; Chief of Carteret Police Department; Officer Paul Stenetella; and Christopher Kuberet, Esq. (Complaint, Caption).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

This is Moore's second Complaint bringing claims under § 1983 with regard to an incident occurring on August 28, 2009. His first Complaint was dismissed without prejudice on or about

2

November 15, 2010.  <u>See</u> <u>Franklin, et al. v. Borough of Carteret,</u> <u>et al.</u>, Civil No. 10-1467 (JLL).  In this action, Moore alleges that, on August 28, 2009, members of the Middlesex County Prosecutor's Office and the Carteret Police Department unlawfully entered his residence on a search warrant that was forged.  In particular, Moore alleges that defendant Celentano forged a judge's signature on the warrant.  Moore complains that the officers entered his apartment with a K-9 dog, which was not on a leash or with its trainer.  He further states that the officers grabbed Moore's young daughter by her arms and tossed her to the ground.  (Compl., ¶¶ C.1 and 2).

Next, Moore alleges that defendants Dammaan and Celentano used excessive force upon plaintiff by assaulting plaintiff's head with a police scanner and then choking plaintiff while he was handcuffed.  Moore states that the officers told plaintiff that they knew he had drugs because he had the police scanner tuned to the Carteret police channel.  (Compl., ¶ C.2).  Moore also alleges that defendant Stenetella had choked plaintiff because Stenetella observed Moore swallow drugs.  Moore does not allege that he suffered any injuries from the alleged assault and choking, except that the x-rays taken to find CDS allegedly showed he had swollen glands.

Moore asserts that defendant Dow is being sued in her supervisory role over defendants, Carteret Police Department,

Chief of Carteret Police, Middlesex County Prosecutor's Office, and Assistant Prosecutor Kuberet.  He also asserts a claim of malicious prosecution against Kuberet, alleging that Kuberet knew the search warrant was not legal.

Moore further claims that Middlesex County Prosecutor Kaplan failed to adequately train and/or supervise the defendants, Lispano, Celentano, Scott, Marchak Rodriguez, Ellmyer and Kuberet, who were the investigators or assistant prosecutors involved in plaintiff's prosecution.  Moore alleges that Lispano filed false police reports stating that Moore had sold her drugs on several occasions, and that Lispano forged an excessive bail amount for plaintiff.

Moore next asserts a claim of supervisor liability with respect to the Chief of the Carteret Police Department who had a supervisory role over Carteret Police Officers Berrios, Dammaan, Stenetella, and the Carteret Police Department itself.  Finally, Moore asserts that all of the defendants violated the First, Fourth, Eighth and Fourteenth Amendment rights of his then-six-year old daughter, Amauriah Moore.

Moore brings this action pursuant to 42 U.S.C. § 1983, seeking an unspecified amount in monetary damages.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996),

requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,

5

325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell
Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the
proposition that "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting
Twombly, 550 U.S. at 555), the Supreme Court identified two
working principles underlying the failure to state a claim
standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief." Fed.
> Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be
simple, concise, and direct.  No technical form is required."
Fed.R.Civ.P. 8(d).

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].

---

[2]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

Second, a District Court must then determine whether the
facts alleged in the complaint are sufficient to show that
the plaintiff has a "plausible claim for relief." [Id.]  In
other words, a complaint must do more than allege the
plaintiff's entitlement to relief.  A complaint has to
"show" such an entitlement with its facts.  See Phillips,
515 F.3d at 234-35.  As the Supreme Court instructed in
Iqbal, "[w]here the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not 'show [n]'-'that
the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at
1949-50].  This "plausibility" determination will be "a
context-specific task that requires the reviewing court to
draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this

pro se pleading must be construed liberally in favor of

Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89

(2007).  Moreover, a court should not dismiss a complaint with

prejudice for failure to state a claim without granting leave to

amend, unless it finds bad faith, undue delay, prejudice or

futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-

111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir.

2000).

## III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.

Section 1983 provides in relevant part:

Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State
or Territory ... subjects, or causes to be subjected,
any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party

9

injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.  ANALYSIS

A.  Excessive Force Claim

Here, it would appear that plaintiff is asserting an excessive force claim in violation of the Fourth Amendment, with respect to the conduct of defendants, Dammaan, Celentano, and Stenetella.  In particular, Moore alleges that defendant Stenetella (referenced as defendant "#14" in the Complaint), "used excessive force by choking [Moore] while he was handcuffed."  Plaintiff admits that the officer had stated that he had seen Moore swallow something, which prompted the officer's attempt to choke plaintiff.  Moore contends that a later x-ray did not disclose any controlled substance, but did show injury to his glands.

Moore also alleges that defendants Dammaan and Celentano used excessive force against plaintiff while at the apartment by assaulting Moore with a police scanner.

10

A claim of excessive force is analyzed under the Fourth Amendment's objective reasonableness standard.  Graham v. Conner, 490 U.S. 386, 388 (1989).  The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures."  U.S. Const. amend. IV.  To prevail on his Fourth Amendment claim, Moore must show that a seizure occurred, and that it was unreasonable under the circumstances. Brower v. Cnty. of Inyo, 489 U.S. 593, 599 (1989); Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999).[3]

While the use of excessive force can indeed constitute an unlawful "seizure" under the Fourth Amendment, when construing an excessive force claim, this Court must consider whether the officers' use of force was objectively reasonable under the circumstances, regardless of the officials' underlying motive or intentions.  See Graham, 490 U.S. at 395-97.  In Graham, the Supreme Court expounded on the reasonableness inquiry, stating that it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

---

[3] This action is not barred by Heck v. Humphrey, 512 U.S. 477 (1994), because plaintiff is not seeking to invalidate his arrest or conviction, and a verdict in his favor would not necessarily imply the invalidity of his criminal conviction.  See Lora-Pena v. Federal Bureau of Investigation, No. 07-3511 (3d Cir., June 20, 2008); Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir. 1997).

11

flight." <u>Id</u>. at 396; <u>see also</u> <u>Gilles v. Davis</u>, 427 F.3d 197, 207 (3d Cir.2005)(quoting <u>Kopec v. Tate</u>, 361 F.3d 772, 777 (3d Cir.) (finding an officer entitled to qualified immunity on excessive force claim "'after resolving all factual disputes in favor of the plaintiff, [ ] the officer's use of force was objectively reasonable under the circumstances'"), <u>cert</u>. <u>denied</u>,543 U.S. 956 (2004)).  In addition, the Third Circuit has noted other relevant factors including "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." <u>Sharrar v. Felsing</u>, 128 F.3d 810, 822 (3d Cir. 1997) (<u>abrogated on other grounds by</u> <u>Curley v. Klem</u>, 499 F.3d 199 (3d Cir. 2007)); <u>see also</u> <u>Couden v. Duffy</u>, 446 F.3d 483, 496-97 (3d Cir. 2006).

When weighing these factors, courts should evaluate the officer's conduct from the officer's vantage point at the time of the incident; thus the reasonableness of a particular use of force

> must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight ... Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (internal quotations and citations omitted).

The Court of Appeals for the Third Circuit recently examined the reasonableness of an excessive force claim in the context of the use of deadly force.  See Lamont v. New Jersey, --- F.3d ---, 2011 WL 753856 (3d Cir. Mar.4, 2011).  In Lamont, the Court of Appeals noted that "'[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene'; Monday morning quarterbacking is not allowed."  Id. at *5 (quoting Graham, 490 U.S. at 396)(other citations omitted).  The Court of Appeals also agreed with the plaintiff that the force used "became excessive as the events unfolded," finding that "[e]ven where an officer is initially justified in using force, he may not continue to use such force after it has become evident that the threat justifying the force has vanished."  Id. at *6 (citations omitted).

In this case, Moore admits that defendant Stenetella thought that plaintiff had swallowed something, which was the motivation behind the alleged choking.  Moore had brought a similar claim in a prior action, Franklin, et al., v. Borough of Carteret, et al., Civil No. 10-1467 (JLL).  This Court dismissed the excessive force claim, without prejudice, because plaintiff had failed to allege any injury or harm, even a de minimis injury.  See Franklin, et al., v. Borough of Carteret, et al., Civil No. 10-1467 (JLL)(docket entry no 4, November 15, 2010 Opinion at pg.

13

13).  Now, Moore states that his glands were swollen but he does not allege that he required any medical attention or treatment as a result of the choking.  Thus, the allegations show only a <u>de minimis</u> injury.  He makes no allegations of injury or harm from the alleged force used by defendants Dammaan and Celentano. Therefore, this Court finds that Moore fails to allege a claim of excessive force, and his Complaint will be dismissed with prejudice, as plaintiff has now had two opportunities to articulate a claim, and has failed to do so.

Moore also appears to be reviving a claim of excessive force with respect to his young daughter.  In the earlier action, <u>Franklin, et al., v. Borough of Carteret, et al.</u>, Civil No. 10-1467 (JLL), this Court dismissed the claim on the following grounds:

> ... Plaintiff contends that the presence of the police dog barking near his daughter exceeded the bounds of what can be considered reasonable force.  However, according to the complaint, it appears that the dog was not released, and there is no evidence that the dog bit scratched, or harmed anyone involved in any way.
>
> In a similar case, the District Court of Colorado held that, the mere presence of a police dog, while intimidating, does not amount to excessive force.  <u>See</u> <u>Navratil v. Parker</u>, 726 F. Supp. 800, 803 (D. Colo. 1989).  Just like the plaintiff in that case, the plaintiff here does not assert that the police dog was used as any more than an instrument of intimidation.
>
> Therefore, as pled, Plaintiff has not asserted sufficient facts, in light of <u>Iqbal</u>, to proceed past <u>sua</u> <u>sponte</u> screening with the third-party excessive force claim on behalf of his daughter.

<u>Franklin, et al., v. Borough of Carteret, et al.</u>, Civil No. 10-1467 (JLL)(docket entry no. 4 at pp. 11-12).

Moore now alleges that one of the officers pushed his daughter to the ground, but he does not allege that she sustained any injury at all. Accordingly, this claim will be dismissed with prejudice for failure to state a claim. As discussed above, Moore has had two opportunities to set forth allegations sufficient to state a claim of excessive force in violation of the Fourth Amendment. He has failed to do so on both occasions.

B. <u>Unlawful Search and Seizure Claim</u>

Next, it would appear that Moore may be asserting a claim of unlawful search and seizure, in violation of his rights under the Fourth Amendment, based on allegations that the search warrant used to enter and search his apartment was "forged" by defendant Celentano. Moore asserts this claim against all of the officers who entered his residence on August 28, 2009, pursuant to the allegedly false search warrant, namely defendants, Joseph Celentano, Sgt. Scott, Investigator Craig Marchak, Investigator Rodriguez, Lisa Berrios and Michael Dammaan.

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, <u>Mapp v. Ohio</u>, 367 U.S. 643 (1961), provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

15

affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.

"A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." U.S. v. Jacobsen, 466 U.S. 109, 113 (1984)(footnote and citations omitted). "[V]alid warrants to search property may be issued when it is satisfactorily demonstrated to the magistrate that fruits, instrumentalities, or evidence of crime is located on the premises," even if "the owner or possessor of the place to be searched is not then reasonably suspected of criminal involvement." Zurcher v. Stanford Daily, 436 U.S. 547, 559-60 (1978). "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable ... subject only to a few specifically established and well-delineated exceptions.'" Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)(quoting Katz v. United States, 389 U.S. 347, 357 (1967)). Those exceptions include search incident to arrest, search made in "hot pursuit," and search pursuant to consent. Katz, 389 U.S. at 357-58.

Plaintiff alleges here that he was presented with a search warrant, but the search warrant was obtained illegally, namely, he claims that defendant Celentano forged a judge's signature. The Court finds that this claim purports to challenge the

16

validity of the search warrant, thus making the search and seizure that occurred on August 28, 2009 unlawful.

Generally, challenges to the validity of a search warrant based on allegations that the accompanying affidavit contains material false statements are governed by Franks v. Delaware, 438 U.S. 154 (1978).  Where a magistrate has issued a warrant, the supporting affidavit is entitled to a presumption of validity. Id. at 171.  The party disputing the veracity of the warrant application can challenge the validity of the warrant by making a substantial preliminary showing that the affiant deliberately or recklessly included in the underlying affidavit falsehoods concerning material facts necessary to the determination of probable cause.  Id. at 155-56.  If the defendant establishes falsity by a preponderance of the evidence, the false statements will be stricken from the affidavit and the court will determine whether the information remaining in the affidavit is sufficient to support a finding of probable cause.  Id.  Courts have employed the Franks analysis in § 1983 claims for Fourth Amendment violations.  Jones v. Town of Seaford, Del., 661 F. Supp. 864, 873 (D. Del. 1987)(citing Krohn v. United States, 742 F.2d 24, 26 (1st Cir. 1984)).

As stated above, in this case, Moore is contesting the validity of the search warrant, claiming that the search warrant was not signed by a magistrate judge, and in fact, was forged by defendant Celentano.  This allegation may state a claim for an

17

unreasonable search, in violation of the Fourth Amendment, sufficient to avoid dismissal at this preliminary stage of the litigation.[4]   However, Moore does not allege that he has not had an opportunity to contest the validity of the search warrant in his state criminal proceeding.   Indeed, he makes no reference whatsoever to any state criminal proceeding that may have resulted from this search and arrest occurring on or about August 28, 2009.   The proper venue in which to challenge the basis for the warrant is the state criminal proceeding if it is still ongoing.   See Younger v. Harris, 401 U.S. 37 (1971)(a federal court generally will not intercede to consider issues that the plaintiff has the opportunity to raise before the state court).

Thus, while the Complaint may state a claim sufficient to avoid dismissal at this time, the Court is mindful that the state criminal proceedings relevant to the search incident of August 28, 2009, may be ongoing, and that while Moore is presently incarcerated pursuant to another conviction, this action may need to be stayed, pursuant to Wallace v. Kato, 549 U.S. 384 (2007),

_____

[4]   The Court of Appeals for the Third Circuit has determined the scope of damages available for an unconstitutional search. "Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy—including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." Hector v. Watt, 235 F.3d 154, 157 (3d Cir. 2001)(quoting Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999)).

or dismissed without prejudice, pursuant to Heck v. Humphrey, 512 U .S. 477 (1994), as the facts become developed.

In Heck v. Humphrey, the Supreme Court addressed a corollary question to that presented in Preiser v. Rodriguez, 411 U.S. 475 (1973), i.e., whether a prisoner could implicitly challenge the constitutionality of his conviction in a § 1983 suit seeking only-damages (a form of relief not available through a habeas corpus proceeding).  The Court rejected § 1983 as a vehicle to implicitly challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck, 411 U.S. at 486-87 (footnote omitted).

In other words, in the event a prisoner challenges his conviction under § 1983, but does it prior to invalidation of that conviction, Heck bars the prisoner's claims as premature. Such prematurity does not imply substantive invalidity of the prisoner's claims in the future: this is so simply because a federal court cannot foresee whether the prisoner's conviction would be overturned, months or years, or even decades in the future, if ever.

The concept of prematurity is, however, narrow.  It is for that reason the Supreme Court instructed district courts, in determining whether a complaint states a claim under § 1983, to: (a) evaluate whether a favorable outcome in the § 1983 action would necessarily imply the invalidity of the prisoner's criminal judgment; and (b) defer accrual only if such finding is made.[5]

For example, in Heck, the Court noted:

> a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction.  Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.  In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

Heck, 512 U.S. at 487 n. 7.

In Wallace v. Kato, supra, the Supreme Court expressly addressed the question when a § 1983 claim for false arrest in violation of the Fourth Amendment accrues.  The Court held that

---

[5]  Consequently, when a state prisoner seeks damages for his conviction in a § 1983 suit, if the district court determines that a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction and/or sentence, the complaint must be dismissed, as premature, i.e., without prejudice, unless the plaintiff can demonstrate that his conviction/sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, that is, in the absence of some other (unrelated to prematurity) bar to the suit.  See Heck, 512 U.S. at 487.

such claim (and the accompanying claim for false imprisonment) accrues immediately upon the arrest at issue, and the period of limitations begins to run as soon as the false imprisonment ends, i.e., when the arrestee becomes held pursuant to legal process.[6] "Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." Wallace, 549 U.S. at 389-90 (citations and footnote omitted).

The Court considered and rejected the argument that a Heck-like deferred-accrual rule must delay the accrual of false arrest claims.

> This would end the matter, were it not for the [prisoner's] contention that Heck v. Humphrey ... compels the conclusion that his [false arrest] suit could not accrue until the State dropped its charges against him.  [T]he Heck rule for deferred accrual is called into play only when there exists "a conviction or sentence that has not been ... invalidated," that is to say, an "outstanding criminal judgment."  It delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn.... What [prisoner] seeks, in other words, is the adoption of a principle that goes well beyond Heck; that an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside.  The impracticality of such a rule should be obvious.  In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict, ...–all this at a time when it can

---

[6]  Hence, the injury of false arrest/false imprisonment can be based solely on the events/restraint that takes place from the moment of arrest and until the moment of arrestee being held pursuant to legal process, e.g., arraignment.

hardly be known what evidence the prosecution has in its
possession.  And what if the plaintiff (or the court)
guesses wrong, and the anticipated future conviction never
occurs, because of acquittal or dismissal?  Does that event
(instead of the Heck-required setting aside of the extant
conviction) trigger accrual of the cause of action?  Or what
if prosecution never occurs-what will the trigger be then?
We are not disposed to embrace this bizarre extension of
Heck.  If a plaintiff files a false arrest claim before he
has been convicted (or files any other claim related to
rulings that will likely be made in a pending or anticipated
criminal trial), it is within the power of the district
court, and in accord with common practice, to stay the civil
action until the criminal case or the likelihood of a
criminal case is ended....  If the plaintiff is ultimately
convicted, and if the stayed civil suit would impugn that
conviction, Heck will require dismissal [without prejudice
to filing an action for wrongful conviction if that
conviction is eventually overturned]; otherwise, the civil
action will proceed, absent some other bar to suit ....
There is, however, one complication that we must address
here.  It arises from the fact that § 1983 actions ...
sometimes accrue before the setting aside of-indeed, even
before the existence of-the related criminal conviction.
That of course is the case here, and it raises the question
whether, assuming that the Heck bar takes effect when the
later conviction is obtained, the statute of limitations on
the once valid cause of action is tolled as long as the Heck
bar subsists....  We have generally referred to state law
for tolling rules ....  [We are not] inclined to adopt a
federal tolling rule to this effect.

Id. at 391-94 (citations omitted).

    Elaborating on the gist of Wallace, the Court of Appeals

observed,

    In Wallace, the Court refused to extend Heck [-based
    deferred accrual] to a § 1983 claim for false arrest in
    which there was no outstanding conviction at the time of the
    accrual....  See Wallace, 549 U.S. at 393.  The Court ...
    clarified that the Heck [prematurity] bar is applicable only
    when, at the time the § 1983 suit would normally accrue,
    there is an existing criminal conviction.

Dique v. N.J. State Police, 603 F.3d 181, 187 (3d Cir. 2010).

However, as the <u>Wallace</u> Court pointed out, "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." <u>Wallace</u>, 549 U.S. at 393-94. For instance, such stay might be warranted if the validity of the evidential matter underlying the prisoner's conviction is so implicated in the § 1983 action that a favorable resolution of the latter would necessarily imply the invalidity of the prisoner's still-being-prosecuted (or still-being-challenged) criminal charges.

This Court finds that situation to be the case here. To the extent that criminal proceedings with regard to the August 28, 2009 incident may be ongoing, Moore's claim that the search warrant was not valid, having allegedly been forged, will likely be an evidential issue in his state criminal proceedings.[7] Consequently, this Court is constrained to allow this claim to proceed, as against defendants, Joseph Celentano, Sgt. Scott, Investigator Craig Marchak, Investigator Rodriguez, Lisa Berrios, Michael Dammaan, and the Carteret Police Department, but will

---

[7] The Court is aware that, on or about March 17, 2011, some of the defendants (namely, defendants Joseph Celentano, Bruce Kaplan and Valerie Lispano) have filed an Answer to the Complaint (<u>see</u> docket entry no. 3), before this action was screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. In the Answer, these defendants allege that Moore had been lawfully arrested on or about August 28, 2009, after he sold a controlled dangerous substance. Neither plaintiff nor the answering defendants have indicated to the Court whether state criminal charges are currently pending against Moore.

direct the parties, namely, the above-noted defendants and plaintiff Moore to show cause in writing why this case should not be stayed pending the conclusion of plaintiff's state criminal proceedings.

C.  <u>Malicious Prosecution</u>

Moore next asserts a malicious prosecution claim against defendant Valerie Lispano, alleging that she filed false police reports against him.  He also asserts a malicious prosecution claim against defendant Middlesex County Assistant Prosecutor Kuberet, alleging that Kuberet knew that the search warrant was not legal.

A constitutional claim for malicious prosecution in the Third Circuit requires a plaintiff to establish five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." <u>Kossler v. Crisanti</u>, 564 F.3d 181, 186 (3d Cir. 2009)(citing <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003)).  <u>See</u> <u>also</u> <u>Johnson v. Knorr</u>, 477 F.3d 75, 81-82 (3d Cir. 2007); <u>Pittman v. Duffy</u>, 240 Fed. App'x. 524, 526 (3d Cir. 2007); <u>Helmy v. City of Jersey City</u>, 178 N.J. 183, 836 A.2d 802, 806 (N.J. 2003)(citing <u>Lind v. Schmid</u>, 67

24

N.J. 255, 337 A.2d 365, 368 (N.J. 1975).  "'Failure to prove any one of these ... elements denies the plaintiff a cause of action for malicious prosecution.'" <u>Wilson v. N.J. State Police</u>, No. 04-1523, 2006 U.S. Dist. LEXIS 60514, *28, 2006 WL 2358349 (D.N.J. Aug. 15, 2006)(quoting <u>Wiltz v. Middlesex County Office of the Prosecutor</u>, No. 05-3915, 2006 U.S. Dist. LEXIS 46821, *24, 2006 WL 1966654 (D.N.J. July 12, 2006)).

The second element of malicious prosecution, favorable termination, is established when the plaintiff is "innocent of the crime charged in the underlying prosecution." <u>Hector v. Watt</u>, 235 F.3d 154, 156 (3d Cir. 2000); <u>see also</u> <u>Freeman v. State</u>, 347 N.J. Super. 11, 27, 788 A.2d 867 (N.J. App.Div. 2002)("The inquiry into whether a termination was favorable focuses on whether it was dispositive as to the accused's innocence of the crime for which they were charged."). "If the prosecutor drops the charges as part of a compromise with the accused, the accused will fail the favorable termination prong ...." <u>Pittman v. Metuchen Police Dep't</u>, No. 08-2373, 2010 WL 4025692, at *7 (D.N.J. Oct.13, 2010).

Under New Jersey law, "[a] malicious prosecution action arising out of a criminal prosecution requires proof: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." <u>Campanello v. Port</u>

Auth. of N.Y. & N.J., No. 07-4929, 2010 WL 3429571, at *2 (D.N.J. Aug.27, 2010)(citing Lind v. Schmid, 67 N.J. 255, 262, 337 A.2d 365 (1975)).  It is well settled that in circumstances where a criminal charge is withdrawn or a prosecution is abandoned pursuant to an agreement or compromise with the accused, the termination is viewed as indecisive and insufficient to support a cause of action for malicious prosecution.  Mondrow v. Selwyn, 172 N.J. Super. 379, 384, 412 A.2d 447 (N.J. App.Div. 1980); Thomas v. N.J. Inst. of Tech., 178 N.J. Super. 60, 61, 427 A.2d 1142 (N.J. Law Div. 1981).

A plaintiff attempting to state a malicious prosecution claim must also allege that there was "'some deprivation of liberty consistent with the concept of seizure.'" Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998)(quoting Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)); see Albright v. Oliver, 510 U.S. 266 (1994).  Ordinarily, the statute of limitations on a malicious prosecution claim begins to run on the date plaintiff receives a favorable termination of his prior criminal proceeding.  Heck v. Humphrey, 512 U.S. 477, 489 (1994).

In this case, Moore has not alleged that his state criminal proceedings have been terminated in his favor, a necessary element of a malicious prosecution claim.  In fact, the Complaint fails to state whether Moore has been convicted, or if his state criminal proceeding is still pending.  Therefore, because the outcome of Moore's state criminal proceedings with respect to the

August 28, 2009 incident is not yet determined, any malicious

prosecution claim he asserts against defendants Lispano and

Kuberet will be dismissed without prejudice at this time.

D.  Supervisor Liability Claim

      Finally, Moore asserts claims of supervisory liability

against defendants Paula T. Dow, Bruce Kaplan and the Chief of

the Carteret Police Department.  As a general rule, government

officials may not be held liable for the unconstitutional conduct

of their subordinates under a theory of respondeat superior.  See

Iqbal, 129 S.Ct. at 1948; Monell v. New York City Dept. Of Social

Servs., 436 U.S. 658, 691 (1978)(finding no vicarious liability

for a municipal "person" under 42 U.S.C. § 1983); Robertson v.

Sichel, 127 U.S. 507, 515-16 (1888)("A public officer or agent is

not responsible for the misfeasances or position wrongs, or for

the nonfeasances, or negligences, or omissions of duty, of

subagents or servants or other persons properly employed by or

under him, in discharge of his official duties").  In Iqbal, the

Supreme Court held that "[b]ecause vicarious or supervisor

liability is inapplicable to Bivens[8] and § 1983 suits, a

plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the

Constitution."  Iqbal, 129 S.Ct. at 1948.  Thus, each government

official is liable only for his or her own conduct.  The Court

---

      [8]  Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics, 403 U.S. 388 (1971)

rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct.  Id., 129 S.Ct. at 1949.

Under pre- Iqbal Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 127 n. 5 (3d Cir. 2010)(internal quotation marks omitted).  "Particularly after Iqbal, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue."  Id. at 130.

The Third Circuit has recognized the potential effect that Iqbal might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether Iqbal requires narrowing of the scope of the test.  See Santiago, 629 F.3d 130 n. 8; Bayer v. Monroe County Children and Youth Servs., 577 F.3d 186, 190 n. 5 (3d Cir. 2009)(stating in light of Iqbal, it is uncertain whether proof of personal

knowledge, with nothing more, provides sufficient basis to impose liability upon supervisory official).  Hence, it appears that, under a supervisory theory of liability, and even in light of Iqbal, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.  Williams v. Lackawanna County Prison, 2010 WL 1491132, at *5 (M.D.Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; e.g., supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff.  See Sample v. Diecks, 885 F.2d 1099, 1117-18 (3d Cir. 1989); see also Iqbal, 129 S.Ct. at 1949-54.

Here, plaintiff provides no facts describing how the supervisory defendants allegedly violated his constitutional rights, i.e., he fails to allege facts to show that these defendants expressly directed the deprivation of his constitutional rights, or that they created policies which left subordinates with no discretion other than to apply them in a fashion which actually produced the alleged deprivation.  In

29

short, Moore has alleged no facts to support personal involvement
by the supervisory defendants, and simply relies on recitations
of legal conclusions such that they failed to supervise or failed
to protect plaintiff in violation of his First, Fourth, Eighth
and Fourteenth Amendment rights.  Indeed, he asserts nothing more
than the mere claim that defendants Dow, Kaplan and the Chief of
Carteret Police Department exercised a supervisory role over the
other defendants.  These bare allegations, "because they are no
more than conclusions, are not entitled to the assumption of
truth."  Iqbal, 129 S.Ct. at 1950.  Accordingly, this Court will
disregard the Complaint's "naked assertions devoid of further
factual enhancement" and "threadbare recitals of the elements of
a cause of action, supported by mere conclusory statements,"
Iqbal, 129 S.Ct. at 1949, and dismiss the Complaint without
prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B) and §
1915A(b)(1), because plaintiff has failed to state a claim
against these supervisory defendants at this time.

IV.  CONCLUSION

     For the reasons set forth above, the Complaint will be
dismissed without prejudice, in its entirety, as against
defendants, Paula T. Dow, Bruce Kaplan and the Chief of the
Carteret Police Department, for failure to state a claim at this
time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).
Plaintiff's malicious prosecution claim as asserted against
defendants, Valerie Lispano and Christopher Kuberet, Esq., also

will be dismissed without prejudice for failure to state a claim at this time.  Plaintiff's claims asserting that excessive force was used by defendants Joseph Celentano, Michael Dammaan and Paul Stenetella, in violation of plaintiff's Fourth Amendment rights, will be dismissed with prejudice for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Further, the Complaint will be dismissed without prejudice, in its entirety, as against defendant Investigator Ellmyer, because plaintiff has failed to allege any facts sufficient to state a cognizable claim of a constitutional violation.  Finally, plaintiff's Fourth Amendment claim alleging unlawful search and seizure shall not be dismissed at this time, however, the Court will issue an Order directing Moore and defendants, Joseph Celentano, Sgt. Scott, Investigator Craig Marchak, Investigator Rodriguez, Lisa Berrios, Michael Dammaan, and the Carteret Police Department, to show cause in writing why this case should not be STAYED until the termination of plaintiff's state criminal proceedings, if still ongoing.  An appropriate order follows.


                              /s/ Jose L. Linares
                              Jose L. Linares
                              United States District Judge

Dated: June 2, 2011